IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TUBE CITY IMS, LLC,
a Delaware limited liability company,

    Plaintiff,

v.                                             Civil Action No. 5:12CV31
                                                                      (STAMP)

SEVERSTAL US HOLDING, LLC,
a Delaware limited liability company,
SEVERSTAL WHEELING HOLDING COMPANY,
a Delaware corporation,
SEVERSTAL DEARBORN, LLC
a Delaware limited liability corporation
and SEVERSTAL COLUMBUS, LLC,
a Delaware limited liability company,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR LEAVE TO FILE A SURREPLY,
DISMISSING SECOND CAUSE OF ACTION AND DEFENDANTS
SEVERSTAL DEARBORN, LLC AND SEVERSTAL COLUMBUS, LLC
DENYING MOTION TO DISMISS AND
SCHEDULING STATUS AND SCHEDULING CONFERENCE**

I.   Background

The plaintiff, Tube City IMS, LLC, ("Tube City" or "plaintiff") filed this civil action in the Circuit Court of Ohio County, West Virginia on January 26, 2012. Shortly after filing the case in that court, and prior to serving the defendants, the plaintiff filed an amended complaint as a matter of course. The plaintiff's amended complaint alleged that Severstal US Holding, LLC ("SUSH"), in concert with its subsidiaries, Severstal Dearborn, Inc. ("Severstal Dearborn") and Severstal Columbus, LLC ("Severstal Columbus") purchased Severstal Wheeling, Inc. ("Severstal Wheeling") with the intent to close that company's steelmaking

operations. The amended complaint further asserted that the alleged co-conspirators reached and effectuated this decision despite their knowledge that the closure of Severstal Wheeling's steelmaking operations would cause Severstal Wheeling to breach its mill services contract ("the OSA") with the plaintiff, and that Severstal Wheeling did, in fact breach that contract, resulting in damages to the plaintiff.[1]

After the plaintiff served the defendants with the amended complaint, the defendants removed this civil action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. The parties then reached a stipulation wherein the defendants agreed to permit the plaintiff to file a second amended complaint so long as the plaintiff did not seek to join Severstal Wheeling Steel Group, Inc., a non-diverse party, to this civil action. This Court approved the stipulation, and the plaintiff filed a second amended complaint which joined defendant Severstal Wheeling Holding Company ("SWHC") to the case. Based upon the same factual allegations made in the plaintiff's two previous complaints and summarized above, the second amended complaint raises two causes of action. The first cause of action alleges tortious interference with contract against SUSH and SWHC.

---

[1]This represents a highly summarized version of the facts in this case, which are lengthy and complex. For the purposes of this opinion which is written in response to a Rule 12(b)(6) motion, and which this Court writes for the parties to this case, who are fully acquainted with the facts, a full recitation of the same has been omitted.

The second cause of action alleges civil conspiracy against all defendants.

In response to the second amended complaint, the defendants filed a motion to dismiss this case in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff responded, offering opposition to the defendants' motion to dismiss the first cause of action of its second amended complaint. In its response, the plaintiff also withdrew its civil conspiracy claim, effectively voluntarily dismissing defendants Severstal Dearborn and Severstal Columbus from this civil action. The defendants replied to the plaintiff's response, and the plaintiff subsequently filed a motion for leave to file a surreply. Both the defendants' motion to dismiss and the plaintiff's motion for leave to file a surreply are fully briefed and ripe for disposition by this Court. For the reasons that follow, this Court will grant the plaintiff's motion for leave to file a surreply and will deny the defendants' motion to dismiss.

## II. Applicable Law

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs.,

Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).

### III. Discussion

A. Motion for leave to file a surreply

This Court finds that it is appropriate to grant the plaintiff leave to file a surreply to the defendants' reply regarding the pending motion to dismiss. Pursuant to Local Rule of Civil Procedure 72.02(b)(3), parties shall not file sur-replies without leave of court. Leave is granted for good cause. In support of its motion for leave to file a surreply, the plaintiff asserts that

it believes that in their reply, the defendants mischaracterize a number of its arguments set forth in the plaintiff's response. Because it would not have a chance to address these alleged mischaracterizations without the aid of a surreply, the plaintiff requests leave to file a surreply. In response, the defendants argue that the plaintiff is simply attempting to get the last word, and ask this Court to deny the motion, or to consider their counter arguments to the arguments made in the surreply, which were offered in their opposition to the motion for leave to file a surreply. The defendants have failed to present argument or evidence that the plaintiff has not shown good cause to file a surreply. Accordingly, for good cause shown, the plaintiff's motion for leave to file a surreply is granted. This Court also notes that it has considered the counter arguments provided by the defendants in their opposition to the motion for leave to file a surreply.

B. <u>Motion to dismiss</u>

Initially, as noted above, the plaintiff has voluntarily withdrawn the second cause of action of the second amended complaint, a claim alleging civil conspiracy against all defendants. Accordingly, this Court will deem the defendants' motion to dismiss denied as moot as to that claim, and defendants Severstal Dearborn and Severstal Columbus, who are named only in the second cause of action, are dismissed from this civil action.

As such, the only count remaining in the second amended complaint is the first cause of action, which purports to raise a

5

claim for tortious interference with contract against SUSH and SWHC (hereinafter "defendants"). Under Pennsylvania law,[2] a party claiming tortious interference with contract must prove the following four elements: "(1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with the contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct." Triffin v. Janssen, 626 A.2d 571, 574 (Pa. Super. 1993) (citations omitted).

The defendants' motion to dismiss is based upon their allegations that the plaintiff has failed to allege sufficient facts to support elements two and three: the intent to harm and the lack of a privilege to interfere with the OSA.

1. Element Two: Intent to harm the plaintiff

The defendants argue that the plaintiff's complaint has failed to allege that they acted with the necessary intent to sustain a tortious interference with contract claim, and the complaint should thus be dismissed. The intent required, the defendants claim,

---

[2]It is undisputed that Pennsylvania law governs the plaintiff's claim in this case. Under the choice of law principles of West Virginia, the law of the state where the plaintiff suffered financial harm as a result of the conduct alleged in the complaint governs the case. The plaintiff's place of business is Glassport, Pennsylvania, and accordingly, the plaintiff suffered any financial harm alleged in the complaint in Pennsylvania. McKinney v. Fairchild Int'l, 487 S.E.2d 913 Syl. Pt. 6 (W. Va. 1997) ("'In general, this State adheres to the conflicts of law doctrine of lex loci delicti.'" (citation omitted)).

6

mandates that the plaintiff show "purposeful action on the part of the defendant, specifically intended to harm the existing relation." Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc., 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998). The defendants assert that the plaintiff has failed to allege such intent, because the second amended complaint simply alleges that the defendants were aware of the existing contractual relationship, and acted in spite of it for reasons wholly unrelated to the contract itself.

In order to show that the defendants acted with the intent required by a tortious interference with contract claim, the plaintiff must present evidence that the defendants intentionally interfered with its contractual relationship with Severstal Wheeling. It is important to note that a plaintiff is not required to show malice in the defendants' actions, nor that the defendants possessed any specific intent to harm the plaintiff's business relations. See Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div., 422 A.2d 611, 622 n.11 (Pa. Super. 1980). Rather, "[i]nterference is intentional when 'the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" Eagle v. Morgan, No. 11-4303, 2011 U.S. Dist. LEXIS 147247 *41 (E.D. Pa. Dec. 22, 2011).

In support of their assertion that the plaintiff's second amended complaint has failed to properly allege the sufficient

intent to interfere, the defendants rely upon Eagle, supra. The defendants argue that this Court should follow the opinion of the Eastern District of Pennsylvania in Eagle, because the plaintiff here has only alleged that the defendants were aware of the mill services contract, not that they intended to cause the breach of the same. They argue that the facts alleged in the plaintiff's second amended complaint assert that the breach of the OSA was an indirect consequence of the decision to cease steelmaking operations at Severstal Wheeling. This Court disagrees.

In Eagle, the District Court for the Eastern District of Pennsylvania found that the counterclaim plaintiff in that case failed to state a claim for tortious interference with contract for a number of reasons, one of those being because it did not adequately plead that the counterclaim defendant intentionally interfered with its contractual relationship with AT&T. 2011 U.S. Dist. 147247 at *39-*44. The court based its conclusion upon the fact that the counterclaim plaintiff "put forth no factual allegations to support any inference that [counterclaim defendant] acted for the purpose of interfering with" the counterclaim plaintiff's contractual relations. Id. at *42-*43. The Court also noted that the counterclaim plaintiff failed to explain the factual basis behind its intent allegation in its briefing of the counterclaim defendant's motion to dismiss. Id. at *43 n.7.

Unlike in Eagle, in the plaintiff's second amended complaint in this case, as well as in the briefing of this motion to dismiss,

8

the plaintiff has presented a number of allegations which support an inference that the defendants not only knew of the OSA when they ceased steelmaking at Severstal Wheeling, but that they were aware that that action would almost certainly result in a breach of the OSA. In fact, the allegation that the defendants had this knowledge is directly evidenced by the second amended complaint's assertion that Tube City was informed that the mill services agreement was terminated by letter transcribed on Severstal International letterhead. Further, the plaintiff makes the following direct allegations in its second amended complaint that the defendants were aware that their actions would almost certainly lead to a breach of the mill services agreement: (1) SUSH learned of Severstal Wheeling's contract with Tube City prior to acquiring Severstal Wheeling for the purpose of ceasing its steelmaking operations (ECF No. 37 *8 ¶ 25); (2) SUSH acquired Severstal Wheeling for the purpose of ceasing its steelmaking operations despite the knowledge that the planned closure would cause Severstal Wheeling to breach the OSA (Id. at *1 ¶ 1 & at *8 ¶ 25); (3) SUSH actually ceased the steelmaking operations of Severstal Wheeling with the knowledge that it would cause harm to Tube City (Id. at *1 ¶ 1 & at *14 ¶ 54).

As such, this Court disagrees with the defendants' assertion that the plaintiff merely alleges that the defendants were aware of the OSA. Rather, based upon the above allegations, it is clear that the plaintiff has provided sufficient allegations to support

an inference that the defendants intentionally caused Severstal Wheeling to breach their contract with the plaintiff.

    2.   <u>Element Three: Lack of privilege to interfere</u>

While a number of jurisdictions consider a privilege or justification on the part of the defendants for a contractual interference to be an affirmative defense to a claim for tortious interference, Pennsylvania law requires the plaintiff to prove the lack of a privilege or other justification as part of its <u>prima facie</u> case. <u>See</u> <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 471 n.7 (Pa. 1979). The defendants assert that the plaintiff has failed to plead sufficient facts to make it plausible that they were not privileged to interfere in Severstal Wheeling's contracts. The defendants also affirmatively argue that they were privileged to interfere with Severstal Wheeling's contracts under Pennsylvania law through the "parent corporation privilege." <u>See</u> <u>Nat'l Data Payment Sys. Inc. v. Meridian Bank</u>, 212 F.3d 849, 856 (3d Cir. 2000) (explaining parent corporation privilege under Pennsylvania law as it has been construed by federal courts).

In response, the plaintiff argues that it has sufficiently pled element three of its tortious interference claim. In support of this argument, the plaintiff asserts that it has alleged that the defendants acted with an improper purpose when they shut down Severstal Wheeling's steelmaking operations despite the knowledge that that shutdown would cause harm to Severstal Wheeling. The complaint further argues that the shutdown was motivated by a

desire to both block a competitor from acquiring Severstal Wheeling, and to divert Severstal Wheeling's resources and customers to Severstal Dearborn and Severstal Columbus. These allegations, the plaintiff asserts, are sufficient to allege the absence of privilege, especially at the pleading stage. This Court agrees.

In order to satisfy the pleading requirements of Federal Rule of Civil Procedure 8, the plaintiff must simply present a "short and plain statement of the claim showing that the pleader is entitled to relief." As explained above, this does not mandate that the plaintiff prove its claim at the point of pleading, but only that it present sufficient facts to convince the Court that its claim is "plausible." Twombly, 550 U.S. at 555 (2007). As the defendants note, courts have found that parent corporations are, at times, privileged to interfere with the contracts of their wholly-owned subsidiaries. See Nat'l Data Payment Sys. v. Meridian Bank, 212 F.3d 859, 856 (3d Cir. 2000). However, courts have also routinely found that this privilege is not a complete one, and based upon the facts presented, have found exceptions to exist. See PSC Info Group v. Lason, Inc., 681 F. Supp. 2d 577 (E.D. Pa. 2010); Advent Sys. v. Unisys Corp., 925 F.2d 670 (3d Cir. 1991). While the defendants acknowledge that exceptions to this privilege have been found, they argue that those exceptions are rare and limited, and have only been found in two situations, neither of

which are factually applicable to this case,[3] and so the facts alleged by the plaintiff cannot support liability. This Court finds this argument to be misplaced and based upon an inappropriately limited reading of the relevant case law.

As the plaintiff points out, in analyzing claims of tortious interference with <u>existing</u> contracts, the Pennsylvania Supreme Court has adopted the practice of focusing on whether an actor's behavior was "proper," as defined by § 767 of the Restatement of (Second) of Torts, in order to determine whether or not it was privileged to act as it did. See <u>Triffin</u>, 626 A.2d at 574; <u>Adler, Barish, Daniels Levin and Creskoff v. Epstein</u>, 393 A.2d 1175, 1184 (Pa. 1978) (superseded on other grounds); <u>Glenn v. Point Park College</u>, 272 A.2d 895 (Pa. 1971) (noting that the courts of Pennsylvania "have accepted and applied § 766 in a variety of situations," but not in situations of prospective contracts "as distinguished from presently existing contractual or business relations."); <u>Ruffing v. 84 Lumber Co.</u>, 600 A.2d 545, 550 (Pa. Super. 1991). As a result of this focus, the inquiry has become one of a "case-by-case" nature which examines the factors such as "'the actor's motive,' 'the interests sought to be advanced by the

---

[3]These situations, as they are defined by the defendants, are as follows: (1) when a parent company induces its subsidiary to breach a contract with a third party in favor of entering into a contractual relationship with a sibling subsidiary, competitor of the third party; and (2) when a parent company uses wrongful <u>means</u> to interfere with a subsidiary's contract with a third party. See <u>Shared Commc'ns. Servs. v. Bell Atl. Props., Inc.</u>, 692 A.2d 570, 575 (Pa. Super. Ct. 1997); <u>United States Fid. and Guar. Co. v. U.S. Healthcare, Inc.</u>,

12

actor,' and 'the relations between the parties.'" Green v. Interstate United Mgmt. Servs. Corp., 748 F.2d 827, 831 (3d Cir. 1984) (internal citation omitted).

This clearly delineated standard, as well as the case law cited by both the plaintiff and the defendants in support of their opposing positions on the matter, makes it clear to this Court that the determination of whether or not any corporate parent privilege may apply to this case depends upon the specific facts of this case alone. Accordingly, the application of any privilege to this case requires a determination of whether, based upon those facts, any interference by the defendants in the contract between the plaintiff and Severstal Wheeling "'should be permitted without liability, despite its effect of harm to another.'" Id. (quoting Restatement (Second) of Torts, § 767 comment b (1979)).

Further, while the defendants' arguments for dismissal on this basis do focus on the application of the privilege to the facts of this case, these arguments are prematurely raised in support of a motion to dismiss. The defendants focus on a comparison of the facts behind a number of cases which found that parent companies were privileged to interfere in the contracts of their subsidiaries, and distinguish the facts of this case from those that have found that a parent company was not so privileged. However, the defendants have failed to present a case which limits the exceptions to any parent company privilege in such a way which would squarely preclude liability based upon the facts of this

case, and have also failed to present a case which defines the limits of the privilege to obviously include the activity alleged in this case.[4]  Further, the defendants have not presented a case, binding upon this Court or otherwise, so factually similar to this one that this Court finds itself compelled to apply its factual determinations to this case at this stage.  Again, Federal Rule of Civil Procedure 8, as well as the United States Supreme Court in Twombly, only require a plaintiff to plead sufficient facts as to raise the possibility of liability above a speculative level.  The plaintiff is not required to prove its case at the pleading stage.

As such, this Court finds that, while it is possible that the privilege now asserted by the defendants may be found to be applicable later in the case, this Court cannot conclude that the plaintiff has failed to plead facts sufficient to create a plausibility of liability.  The plaintiff has pled facts to suggest that the defendants acted improperly in their decision to cease steelmaking at Severstal Wheeling, because such a decision harmed Severstal Wheeling, their subsidiary.  As an independent factually based determination is necessary regarding whether or not these allegations are sufficient to prove that the defendants were not privileged in their actions, the plaintiff's complaint has

---

[4]The defendants have even admitted that the Pennsylvania Supreme Court has not ruled on the scope of a corporate parent privilege.  ECF No. 53 *3 (citing Nat'l Data Payment Sys., Inc., 212 F.3d at 857).

sufficiently pled element three of its claim for tortious interference with contract.

## IV. Conclusion

For the reasons stated above, the plaintiff's motion for leave to file a surreply is GRANTED. The second cause of action of the second amended complaint, as well as defendants Severstal Dearborn and Severstal Columbus, are VOLUNTARILY DISMISSED from this civil action. Finally, defendants' motion to dismiss is DENIED as to the first cause of action of the second amended complaint, and DENIED AS MOOT as to the second cause of action of the second amended complaint.

This Court notes that discovery in this case has been stayed pending this Court's ruling on the motion to dismiss. Accordingly, this Court finds that it is necessary to hold a status and scheduling conference with all remaining parties to this civil action in order to establish a scheduling order. The parties are thus DIRECTED to appear by counsel before this Court for a status and scheduling conference on **March 11, 2013 at 2:15 p.m.** in the chambers of Judge Frederick P. Stamp, Jr., Federal Building, 1125 Chapline Street, Wheeling, West Virginia 26003. The parties are directed to meet and confer prior to the conference regarding the status of this case, necessary discovery subjects, and the length of time that the parties believe is necessary for discovery. The parties are further directed to be prepared to discuss all subjects relevant to this case at the status and scheduling conference.

The Court will permit those out-of-town attorneys having their offices further than forty (40) miles from the point of holding court to participate in the conference by telephone. However, any such attorney shall advise the Court as soon as possible prior to the conference of his or her intention to participate by telephone and shall (1) inform all counsel of his or her appearance by telephone; (2) confer with other out-of-town attorneys to determine if they wish to appear by telephone; (3) advise the Court of the name of the attorney who will initiate the conference call and all such attorneys appearing by telephone; and (4) initiate a timely conference telephone call with such attorneys to the Court at 304/233-1120 at the time of the scheduled conference. If the attorneys cannot reach agreement as to the initiator of the call, the Court will make that determination.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    March 6, 2013.

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE