IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TUBE CITY IMS, LLC,
a Delaware limited liability company,

    Plaintiff,

v.                                         Civil Action No. 5:12CV31
                                                         (STAMP)

SEVERSTAL US HOLDINGS, LLC,
a Delaware limited liability company,
SEVERSTAL WHEELING HOLDING COMPANY,
a Delaware corporation,
SEVERSTAL DEARBORN, LLC,
a Delaware limited liability corporation,
and SEVERSTAL COLUMBUS, LLC,
a Delaware limited liability company,

    Defendants.


**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY**

    I.   Procedural History

The plaintiff, Tube City IMS, LLC, ("Tube City") filed this civil action in the Circuit Court of Ohio County, West Virginia. Shortly after filing the case in that court, and prior to serving the defendants, Tube City filed an amended complaint as a matter of course. Tube City's amended complaint alleged that Severstal US Holding, LLC ("SUSH"), in concert with its subsidiaries, Severstal Dearborn, Inc. ("Severstal Dearborn") and Severstal Columbus, LLC ("Severstal Columbus"), conspired to close their wholly-owned subsidiary, Severstal Wheeling, Inc. ("Severstal Wheeling"), despite the knowledge that such a closure would cause Severstal

Wheeling to breach its mill services contract ("the OSA") with Tube City.

After Tube City served the defendants with the amended complaint, the defendants removed this civil action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.  The parties then reached a stipulation wherein the defendants agreed to permit Tube City to file a second amended complaint so long as Tube City did not seek to join Severstal Wheeling Steel Group, Inc., a non-diverse party, to this civil action.  This Court approved the stipulation, and Tube City filed a second amended complaint which joined defendant Severstal Wheeling Holding Company ("SWHC") to the case.  Based upon the same factual allegations made in Tube City's two previous complaints and summarized above, the second amended complaint raises two causes of action.  The first cause of action alleges tortious interference with contract against SUSH and SWHC.  The second cause of action alleges civil conspiracy against all defendants.

In response to the second amended complaint, the defendants filed a motion to dismiss this case in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Court denied that motion. However, as part of the briefing of that motion, Tube City voluntarily dismissed the civil conspiracy claim, which resulted in the dismissal of two defendants, Severstal

Dearborn and Severstal Columbus. As such, the two remaining defendants are SUSH and SWHC.

Tube City then filed a motion for leave to file a third amended complaint. This Court denied Tube City's motion for leave to amend. Before this Court's order, however, the defendants filed a motion for summary judgment. The motion was briefed by the parties. Tube City then filed a motion for leave to file surreply. The defendants filed a response in opposition to such motion. As such, the motion is now fully briefed and ripe for review.

## II. Facts

In their motion for summary judgment, the defendants contend that Tube City is barred from recovering in this action by the concept of double recovery. The defendants split this overarching concept into two distinct arguments:

> (1) The defendants assert that Tube City was fully compensated because it exchanged its arbitration award (with Wheeling) for a new set of arrangements with RG Steel, who bought Wheeling after the arbitration award was entered.
> (2) The defendants contend that they are entitled to a set off that is greater than the amounts of damages Tube City is seeking from the defendants.

The defendants argue that after the arbitration award was given, RG Steel assumed Wheeling and entered into an agreement with Tube City to fulfill the $16 million arbitration award through a series of commercial transactions that both hoped would lead to future business and profit. The defendants contend that $9.3 million of that award, the recovery given by the arbitrator for

3

Wheeling's alleged breach of the operating agreement, is all that can be sought by Tube City against them in this action. Thus, the defendants argue that the remaining amounts have not been pleaded here. The defendants assert that Tube City received over $46 million in profit from the arrangement with RG Steel and reasonably bargained for such a relationship. As such, the defendants contend that Tube City has already been compensated for the alleged wrongs in this action. The defendants aver that they are being sued because the bargain did not fully pay off because RG Steel entered bankruptcy.

Next, the defendants contend that Tube City can only seek $9.3 million in damages because that is what the arbitrator awarded for the breach of contract claim. Further, the defendants assert that Wheeling has paid $11.9 million toward the award. Thus, the defendants argue that Tube City has already received more than the amount of damages sought in this action and the defendants are entitled to a setoff of that amount. The defendants assert that any agreement reached by RG Steel and Tube City should not be used to decrease the setoff amount because, as non-settling parties, the defendants did not have the responsibility to identify what the payoff amounts were credited toward by Tube City and the defendants would be prejudiced if held to such a standard.

In response, Tube City contends that it has only recovered $7.7 million through the settlement agreement with RG Steel which

still leaves (1) $8.5 million in direct damages; (2) post-award interest; and (3) punitive damages. Further, Tube City argues that it recovered all that it could from RG Steel through the settlement agreement and in the bankruptcy proceedings and that the defendants have not provided evidence otherwise. Tube City asserts that it only recovered $7.7 million after having to pay $4.2 million to RG Steel to resolve a bankruptcy preference claim. Tube City contends that the $4.2 million thus cannot be used as part of any setoff. Tube City further argues that it is entitled to attorneys' fees because it only withdrew its motion for fees during arbitration because it had successfully entered a settlement agreement with RG Steel.

Tube City also asserts that it neither had a duty to first seek recovery from Wheeling nor may the unsatisfied judgment affect the award here. The only setoff that the defendants are entitled to is the $7.7 million that has been recovered by Tube City. This is so because Tube City's agreement with RG Steel did not include any profit that Tube City would normally make from the business conducted between the two. Rather, Tube City contends that the agreement only affected payments that Tube City made to RG Steel which would either be (1) collected by RG Steel and not credited toward the settlement amount or (2) not paid by Tube City in exchange for a credit to the settlement amount. Additionally, Tube City contends that it is entitled to more than the $9.3 million in

5

damages. Under Pennsylvania law, a plaintiff can claim damages for a tortious interference claim above the damages it could seek pursuant to the underlying breach of contract. As such, Tube City asserts that it has a claim for above and beyond the starting amount of $9.3 million in damages which was found by the arbitrator (such as punitive damages).

In reply, the defendants argue again that Tube City was fully compensated when it entered the settlement agreement with RG Steel. The defendants contend that Tube City's contention that only certain payments were allocated to the settlement amount is a "red herring" and that what matters is that Tube City substituted its arbitration award for the settlement agreement with RG Steel. Thus, Tube City's bargain was for the agreement in exchange for the abolishment of the arbitration award.

Further, as to the amounts claimed by Tube City above $9.3 million, the defendants assert that Tube City is not entitled to them:

> (1) The defendants assert that the price adjustment of $3.9 million cannot be claimed because the arbitrator specifically ruled that the price adjustment was not due to a breach of the contract. Thus, the defendants argue that claim fails because the price adjustment did not flow from a breach of contract.
>
> (2) The defendants argue that the attorneys' fees of $3.1 million cannot be recovered because that amount related to all claims made in the arbitration, not just the breach of contract claim. Further, the defendants contend that because there is no way to determine what fraction of the attorneys' fees is related to that claim, any amount would be speculative.

6

(3) The defendants assert that post-award interest cannot be awarded because such interest could only be recovered against the party who failed to pay the award. Additionally, the defendants contend that as the defendants were not parties to the arbitration award or the settlement agreement, they are not required to pay interest on such an award.

(4) The defendants next argue that Tube City is not entitled to a reduction of the setoff amount of $4.2 million because Tube City voluntarily returned those funds to RG Steel in a separate agreement not related to the initial exchange of the arbitration award for the settlement agreement. Further, the defendants assert that Tube City cannot claim that payments received from RG Steel should be applied pro rata to various components of the arbitration award as Tube City has provided no authority for this notion and cannot rebut the authority provided by the defendants.

(5) The defendants assert that Tube City is not entitled to punitive damages as any claim it attempts to make against SUSH for tortious interference was already made during the arbitration proceedings and found to be fruitless by the arbitrator. Thus, the defendants argue, Tube City is estopped from making such arguments in this proceeding. Additionally, the defendants contend that Tube City has failed to assert in the complaint that the defendants conducted themselves in bad faith during the arbitration. Finally, the defendants assert that even if properly pleaded, any decisions made were reasonable business decisions not made in bad faith and Tube City has failed to provide evidence to the contrary.

In its motion to file surreply, Tube City asserts that the defendants have for the first time raised arguments in opposition to Tube City's claims for punitive damages and its right to recover compensatory damages. Tube City first reiterates that SUSH directed the conduct of the arbitration and ignored Wheeling's interpretation of the agreement Wheeling had with Tube City. Next, Tube City contends that the settlement agreement with RG Steel had

predetermined payment schedules rather than Tube City having unilateral control over what payments would be counted toward the settlement payoff. Tube City then argues that the $3.9 million retroactive price adjustment is related to the breach of contract and was found to be related by the arbitrator. The only difference between that award and the general breach of contract award was that Tube City had not shown that Wheeling acted in "bad faith" according to the arbitrator. Further, Tube City contends that this finding was significant as Wheeling is not the party whose conduct is at issue because Wheeling was a mere "puppet" for SUSH.

Tube City also argues that it is entitled to the $3.1 million in attorneys' fees because (1) the services agreement between Wheeling and Tube City stated that attorneys' fees would be awarded to the prevailing party, which was Tube City and (2) it is entitled to interest because SUSH's actions prevented Wheeling from paying Tube City initially. Tube City further contends that it is entitled to the $4.2 million, lost through the bankruptcy action, because it should not be penalized for RG Steel's bankruptcy and payments that it made within 90 days of that bankruptcy. Additionally, Tube City asserts that it has provided significant evidence of SUSH's bad faith during the arbitration and its withholding of pertinent documents. Finally, Tube City argues that if this Court accepts the defendants' determination that Tube City is only entitled to the $9.3 million in damages from the

8

arbitration, such damages should be designated pro rata as was set out in the settlement agreement.

In response, the defendants argue that a lengthy surreply is not needed as the defendants merely responded in their reply to the arguments set forth in Tube City's response, which included punitive damages.

For the reasons set forth below, this Court finds that summary judgment must be denied as there are genuine issues of material fact in this action.

### III. Applicable Law

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a

trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

## IV. Discussion

### A. Plaintiff's Motion for Leave to File Surreply

The local rules of this Court state that a party should not file a surreply without first obtaining the permission of the court. L. R. Civ. P. 7.02(b)(4); Thomas v. Branch Banking & Trust Co., 443 F. Supp. 2d 806, 809 n.2 (N.D. W. Va. 2006). Generally, a surreply is permitted when a party seeks to respond to new material that an opposing party has introduced for the first time in its reply brief. Schwarzer, Tashima, & Wagstaffe, Federal Civil Procedure Before Trial 12:110 (The Rutter Group 2008). See also Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."). If a court does not rely upon the new material raised in the opposing party's reply brief to reach its

decision in a matter, then a surreply is superfluous and unnecessary. See e.g. EEOC v. LA Weight Loss, 509 F. Supp. 2d 527, 540 (D. Md. 2007) (denying the parties' motions to file surreplies because the court did not rely upon the new case law and evidence in making its decision); First Penn-Pacific Life Ins. Co. v. Evans, 162 F. Supp. 2d 423, 430 (D. Md. 2001) (denying plaintiff leave to file a surreply "[s]ince the Court will not be considering the additional contentions advanced"). In those circumstances, a motion for leave to file a surreply should be denied.

In Tube City's motion for leave to file a surreply, it contends that an additional memorandum was necessary in order for it to address new arguments raised by the defendants in their reply to the motion for summary judgment. Tube City asserts that the defendants raised for the first time opposition to Tube City's right to pursue punitive damages and also cited additional cases that had not been previously addressed. The defendants, on the other hand, assert that new arguments were not raised in their reply and there was no reason for Tube City to file such a motion.

This Court finds that Tube City's motion for leave to file a surreply should be granted as the issue of punitive damages required further consideration by Tube City.

B. Motion for Summary Judgment

The main contention of the parties on summary judgment is whether or not Tube City has a right to damages in this action or

11

whether Tube City is barred from recovery by the doctrine of double recovery.

   1.   Compensatory and Punitive Damages

The determination of damages is a factual question to be decided by the fact-finder. Judge Technical Servs., Inc. v. Clancy, 813 A.2d 879, 885 (Pa. Super. Ct. 2002). A compensatory damage award in a tortious interference action may thus be upheld if it is found that the fact-finder "was warranted in finding tortious interference. Once the court arrive[s] at this conclusion, the only question [is] whether the amount of the damage award was justified by the evidence . . . ." Joseph D. Shein, P.C. v. Myers, 576 A.2d 985, 988 (Pa. Super. Ct. 1990). Further, "once a finding of tortious interference has been made, the tortfeasors must pay damages." Judge Technical Servs., Inc., 813 A.2d at 885. Under Pennsylvania law, "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." Id. at 887 (citations omitted). As such, Pennsylvania law holds that it is not double recovery if a party has recovered for breach of contract and for tortious interference because tortious interference requires proof of conduct not required for a breach of contract. Id.

Further, under Pennsylvania law, a plaintiff may recover punitive damages if "a reasonable relationship [ ] still exist[s] between the nature of the cause of action underlying the compensatory award and the decision to grant punitive damages." Id. (citing Sprague v. Walter, 656 A.2d 890, 926 (Pa. Super. Ct. 1995), appeal denied, 543 Pa. 695, 670 A.2d 142 (1996)). "An essential fact needed to support a claim for punitive damages is that the defendant's conduct must have been outrageous." Temporaries, Inc. v. Krane, 472 A.2d 668, 673 (Pa. Super. Ct. 1984) (citing Smith v. Brown, 423 A.2d 743, 745 (Pa. Super. Ct. 1980)). Further, even if conduct is based on a "business judgment" if done with "dishonesty and [with a] lack of business ethics[,]" punitive damages may still be found for a tortious interference claim. Empire Trucking Co. v. Reading Anthracite Coal Co., 71 A.3d 923, 937 (Pa. Super. Ct. 2013).

In this action, there are simply too many issues that remain to grant summary judgment at this stage of the litigation. Tube City has set forth several allegations which remain issues of material fact as to liability and damages that must be settled by a fact-finder. Those allegations include: SUSH acquired Severstal Wheeling in order to thwart competitors rather than to actually use Severstal Wheeling as an actual business; SUSH generally interfered with the OSA; SUSH prevented Severstal Wheeling from negotiating any settlement with Tube City as to Tube City's contract claims;

SUSH orchestrated Severstal Wheeling's improper litigation tactics; SUSH directed Severstal Wheeling to take the position in arbitration that the OSA was simply a requirements contract rather than a "take or pay" contract; Tube City made the prudent business choice to concede the claims against RG Steel based on the full amount of the settlement payments made during the preference period; and given the above, Tube City has not made a full recovery.

These allegations, at the least, support a reasonable liability and compensatory damages argument on the part of Tube City. These allegations are of course contested by the defendants, but, based on the requirements for a summary judgment, such contention necessarily leads to the denial of summary judgment.

2. <u>Attorneys' Fees and Post-Judgment Recovery</u>

In order to recover attorneys' fees for a tortious interference claim, the plaintiff must establish:

> (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement; (2) that the litigation was with a third-party, not with the defendant from whom the fees are sought to be recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort, that they are the natural and necessary consequences of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery.

64 Am. Jur. <u>Proof of Facts</u> 3d 273 (originally published in 2001);

see also Restatement (Second) of Torts § 914(2)(1979). Further, Pennsylvania courts uphold attorneys' fees pursuant to a tortious interference claim for a plaintiff for costs incurred during enforcement of the underlying agreement. Judge Technical Servs., Inc. v. Clancy, 58 Pa. D. & C.4th 98, 104 (Com. Pl. 2000), aff'd, 2002 PA Super 391, 813 A.2d 879 (Pa. Super. Ct. 2002).

Thus, the OSA may provide some relief for Tube City by way of attorneys' fees as it has a provision which provides an award of attorneys' fees for the prevailing party. However, it is still an issue as to whether Tube City can prove such damages specifically for the breach of the OSA. This is again an issue which requires the weighing of evidence by the trier of fact and whether or not the evidence provided by Tube City is sufficient.

This same analysis can be applied to Tube City's contention that it is entitled to post-judgment interest based on the arbitrator's finding of a breach of the OSA at the arbitration stage. If it is shown that the defendants' tortious interference caused the breach of the OSA, the ensuing litigation, and post-judgment interest, then Tube City would be entitled to those damages. This is an issue that is proven at this point beyond speculation but would still require a finding that the evidence is sufficient to award such interest. The defendants have contended that Severstal Wheeling was not required to pay interest on the arbitration award in the year-long payment agreement that Severstal

Wheeling and Tube City entered after arbitration.  However, Tube City has made allegations and provided at least some evidence that could counteract such an agreement and thus this Court may not find at this time that post-judgment interest could not be awarded.

## V. Conclusion

Based on the analysis above, the defendants' motion for summary judgment is DENIED.  Further, the plaintiff's motion for leave to file a surreply is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    September 8, 2014


                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE